Mr. Welch, good morning. Good morning, Your Honors. May it please the Court, my name is Daniel Welch and I am the attorney for Petitioner Oswaldo Cabas. At this time, I would ask the Court to allocate one minute of time for rebuttal purposes, if necessary. You may. Petitioner is seeking relief in the form of overturning the Board of Immigration Appeals' decision denying Petitioner's motion to reopen based on changed country conditions. The standard of review for overturning the Board of Immigration Appeals is an abuse of discretion. In order to be successful in a motion to reopen based on changed country conditions, you have to show two things. The first is evidence of material change in country conditions that was not available at the original merits hearing, and the second is a prima facie case of eligibility for the relief sought, which in this case would be asylum with holding of removal in the Convention Against Torture. Counselor, did you talk to the government's attorney this morning? No, Your Honor. We met. Did you talk to her before today? Um, uh, through email, Your Honor. Did you find out if they were to deport your client? How would they do that? Um, no, I did not. Would they send him to Mr. Guado, or would they send him to Mr. Maduro? Who would meet him at the airport? I don't, I'm not sure. I'm not sure, Your Honor. Um, it is Petitioner's contention that the Board of Immigration Appeals abused their discretion when they determined that Petitioner could not have his case reopened due to the country conditions in Venezuela have not changed material, materially, from the year 2010 to the year 2018 when the Petitioner motioned to have his case reopened. What was the last, um, status of the country issued by the State Department? The last one we submitted in the record? No. Well, the last one on the record, what date was that? It was 2016. Have they issued any other says then? They have, Your Honor, but it's not, they're not in the record. Have you made any request to, uh, do they show a change in status? Um, a change in country conditions. I haven't looked at them because they, they weren't in the record. So I thought I was limited just to what was in the record, which is the 2009 country conditions report and the 2016. But I would submit that Venezuela is changing as we speak right now. But can you explain how we take that into consideration? In other words, what, we need to determine whether there's been a change. Suppose there were no change between the earlier hearing and the later decision, but then complete radical change within the year while an appeal is pending. What, what would, what, is there any precedent for how we would deal with that? I'm not sure, um, on the law, Your Honor, I would state that, um, if I thought the 2016 Venezuelan human rights report was not enough, I would have, uh, tried to supplement the record. Um, I'm not sure the case law on that. Um, but it's my contention that the 2016 Venezuelan human rights report are much, much different and it's materially changed since 2009. They have a different dictator. It used to be, um, Chavez and now it's Maduro. So that's another way of saying, I think, that you're content to have us assess the conditions as of the time the board issued its decision using the 2016 report. That's correct. In your view, to what extent of any, can we take judicial notice of anything related to this case? Well, I would ask that you would take judicial notice of the events that are occurring in Venezuela right now. For example, um, Maduro and, uh, interim president Juan Guaido, um, there's a struggle for power and, uh, Juan Guaido's chief, um, um, chief assistant or chief advisor was just incarcerated by Maduro. But now that's just the opposite of what you said to me a few minutes ago, which was we were, you were content to have us assess the record as of the 2016 report, but now you want us to take judicial notice of what we've seen in the news over the last year. I think either way is enough, Your Honor. The 2016 shows a material change and I think the changes that are happening today, um, are enough. Um, but I, I'm relying on the 2016, um, country conditions reports highlighting the fact that, uh, Venezuela has changed dramatically. Um, extrajudicial killings by security forces has increased sevenfold. Well, did you explore whether there are any procedural mechanisms for getting a reconsideration by the board? We motioned to reopen through the board. We, we could have submitted a motion to reconsider as well. Uh, we felt strong enough with the appeal that we have on the record. Um, political prisoners has increased threefold since 2009. And where are you getting these figures from? This, the 2016 human rights report compared to the 2009 at the original merits hearing. The 2016 report also said specifically that there is an increasingly authoritarian executive exercising significant control over the legislative, judicial, citizen, and electoral branches of government. It's obvious that Venezuelan political persecution has intensified. And if you look at CO10, that's one of the elements is whether it's deteriorated or intensified. Uh, furthermore, petitioner submitted an affidavit in support of his claims. Um, um, in, in that affidavit, he stated that two of his friends were killed in 2017 that were part of the same political party in Nuevo Tiempo. Um, and he also testified that he had a warrant for his arrest and he let's see. Two of his friends were arrested and tortured and killed. Um, furthermore, the BIA, uh, was allowed to consider the evidence petitioner submitted below with the new evidence he submitted in his motion to reopen. The evidence below was that Mr. Calvis was a political The IJ at the merits hearing found Mr. Calvis credible, but said that he did not meet the threshold of past persecution and a reasonable fear of future persecution because he had family members that, um, that lived there, uh, and were unharmed, which is, isn't true because in the record, uh, there were, his brother was attacked. So it's, it's, it's petitioner's contention that he's met the change of country conditions and that he's met the prima facie case for the underlying relief, which is asylum with or removal of convention against torture. And that's all. Thank you. Thank you. Good morning. May it please the court and I'll see more on behalf of attorney general William Barr. This court denied petitioners first petition for review in 2012 and affirmed that petitioner had failed to establish his eligibility for protection for withholding a removal based on his political opinion. So what about what's currently going on? Are we supposed to ignore that? Who are you going to deliver him to? I don't know the answer to that, your honor, but in terms of what, why I don't know, because that would be a question for the department of Homeland Security, not one that I would be able to answer. However, I can answer your question about new evidence. Were this court to consider evidence outside of the record, a new motion to reopen would have to be filed. At the present time, opposing counsel was correct that all that is before the court and all that was before the board is what is in the record, which is the 2009 state department report and the 2016 state. Are we allowed to take judicial notice of anything dealing with this case at this time? It is my understanding that no, your honor, you are not, because that is separate and apart from what was before the agency in this case and what is before us today. So can we sui sponte remand to the agency to take judicial notice of the current condition, such as there are no commercial flights flying into Venezuela, so that if the U.S. were to deport him, it would have to arrange a special flight? It is my understanding that people are still being removed to Venezuela. As far as taking the step of sui sponte remand, I'm not entirely sure, your honor, whether that would be something within this court's jurisdiction. All I am sure of is that the board did not consider anything outside of 2016 and that is all that is within the record today. So if we are deporting people to Venezuela, who are we taking them to and turning them over to? I do not know that, your honor. Who was the last time we deported someone there? I do not know that either. Well, how do you know that we are deporting people? I know that because I confirmed with my agency contacts that that was still an option for us at the time. And regardless, your honor, I think the issue here today is that petitioner did not establish that conditions for political opponents in the government had intensified or deteriorated between his hearing and when he submitted the motion to reopen based on the evidence that is within the record. Let's take some of that evidence. What really caught my attention was the arrest warrant. Yes, your honor. Assume for a moment, and I know that the board has a different view on it, assume for a moment that that arrest warrant is a real document and is a real arrest warrant. If we just take just the arrest warrant and the 2017 report and we now know that because he was perceived as demonstrating against the government, the government is seeking to seize him to charge him with treason. Doesn't that alone tell us that conditions have changed enough since 2009? If we assume the warrant is correct. Even getting the warrant full faith and credit, your honor, that would not be enough to get him over his heavy burden. The government's position is that in addition to the fact that the country condition reports don't reflect material change, but rather a continuation, being an opponent of the government was always, politically opposing the government, particularly in something public like a rally, which Petitioner did before he entered the United States, was always a ground for criminalization. I don't think there's any evidence in the record that if you demonstrate against the government you get charged with treason. Was that in the earlier record at all? That specifically is a pretty big changed condition in the country to go from now if you demonstrate against the government, you're arrested for treason. That is also assuming that the warrant is valid, your honor. Yes, yes. Is that why you assume it's not? I'm sorry? Does the government challenge the validity of authenticity, I should say, of the warrant? The board did give the warrant limited evidentiary value, your honor, because there was nothing else in the record to authenticate or substantiate the warrant. And they cite a bunch of cases within their decision that essentially stand for the proposition that Petitioner had the burden to validate this warrant, which at the moment, the agency, the only thing he supported, or introduced to support the fact that the warrant was authentic, was his own Do you have a copy of it there with you? Within the record, yes, I do, your honor. It's a heck of a good fake, if it's a fake. Could I see it please? Yeah, it's right here. I want to see the original. I'm sorry? Do you have the original there? No, I have the photocopy. Oh, photocopy. Well, I'll look at the photocopy. Go ahead, keep going. So it's really an impressive fake, if it's a fake. I mean, the seal's even slightly smudged. It all looks very official. It could be a fake. But isn't the standard on a motion to reopen, is that whether he's got a prima facie case? It's both, your honor. So the board here denied the motion to reopen on two grounds. One, that he... One, no change country conditions. Correct. But then the prima facie case, doesn't that hinge on essentially giving zero weight to that, or at least no prima facie weight to that warrant? The warrant, in addition to his affidavit, the board found both to be of limited evidentiary value. No, no, no, not limited, because the test is prima facie, that could be limited. Doesn't... Let's put it this way. Would you agree that for the prima facie showing, well, for his showing that he was going to be persecuted if the country conditions have changed, that warrant is superb evidence if it's real? The government's position is not that, your honor. It's that it was not enough... In other words, the government would take the position that if that warrant is real, they're going to ship him back? The government's position is that even assuming that that warrant and everything within his record is true, it's still not enough to demonstrate a reasonable likelihood of future persecution based on everything else that is within the record. If you assume it's true that police for the government of Venezuela have gone to his family's house and served a real warrant for his arrest for treason for demonstrating against the government, the we don't think you've shown there's a realistic possibility of persecution? Well, I think, your honor, if I can back up a little bit, this motion, because it was untimely, he had the burden to show changed country conditions... It seems to me that that warrant may or may not be correct, but it certainly meets the plausible or rational basis for a prima facie test that if it's real, he's got a heck of a... This is better than a large number of cases we see where we say there's evidence of it. So why wouldn't the board say that warrant is, if it's right, he's got a great case, but we don't know if it's right, but it's prima facie, so we're reopening, and then he gets the hearing where he has to prove that it's a real warrant. Then he has the burden. But he doesn't have the burden right now, does he, of proving to a preponderance that that's a real warrant? He did have that burden before... For a prima facie case? He had the burden to present evidence that would demonstrate his future eligibility for relief. No, he just has to show a prima facie case of eligibility for relief. He doesn't have to prevail at the stage of reopening. That's why you would reopen it, would be to find out. Correct, your honor, that is true, but the board also determined of a separate and independent and also dispositive ground that he failed to establish changed country conditions. So on that basis alone, the board was warranted and did not abuse its discretion by denying the motion to reopen. Who's got the original? I don't know that, your honor. You don't know? Don't you have to present... This is part of the record of appeal? It's within the record. No, no, no, I want the original. But the board's ruling against him is he didn't present what they thought was an original real affidavit. Affidavit or warrant? A warrant. Yeah, all that is within the record is a photocopy of the warrant itself. I don't have any idea what the original warrant is, if one exists. How would you authenticate it? You're going to go and ask the Maduro government to authenticate that this is a real warrant? Petitioner could have procured authentication from someone from the Venezuelan government, or he could have provided affidavits from other family members. Wait, let me get this straight. The government's tracking him down, potentially. You don't know if it's not true. They're potentially trying to track him down for treason, and you're suggesting he has a friend or family member go knock on the door of the police or the government? I am not, your honor. But that's Judge Thompson's question. There are other methods through which he could have provided an affidavit from his mother, who he said had received the warrant. How would she know any more than him? If it's authentic? Presumably, she may have the original copy of the warrant, or she would have been able to, being in Venezuela, find somebody else who might have been able to provide additional documentation. There is a regulation that requires that foreign documents do get authentication, but it doesn't necessarily provide the method as to how. Within case law, there are a variety of different ways in which people have been able to substantiate their claim that the warrant they received or the government document that they have in their position is authentic. And here, Petitioner did not do so. If your honors don't have any more questions, government will conclude, I believe. I have a lot of questions, but we don't seem to be getting any answers. Thank you. Very smart. Thank you.